# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

| | |
|---|---|
| FLUX DRIVE, INC., FLUX DRIVE, LLC, IMPACT ENGINEERING INC., TRI-TEC MANUFACTURING LLC, and PHILIP CORBIN, III<br><br>Plaintiffs–Appellants,<br><br>v.<br><br>MICHAEL TROY SPARKS, CMONSENSE DESIGN LLC, JOHN QIANG RONG, ZYRCON GLOBAL STRATEGIES LLP, LEIGH WANG, and LIJUAN ZHAO<br><br>Defendants–Appellees. | Case No. 25-1308<br>Case No. 26-1013 |

On Appeal from the United States District Court
For the District of Colorado
The Honorable Judge Daniel D. Domenico
District Court Case No. 1:24-CV-02784-DDD-STV

## APPELLEES' SUPPLEMENTAL ANSWERING BRIEF

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Christopher L. Ottele; Ruth A. Turley
675 15th Street, Suite 2900
Denver, CO 80202
Telephone: 303.223.1163
Fax: 303.749.7272
cottele@bhfs.com; rturley@bhfs.com
*Attorneys for Defendants-Appellees John Qiang Rong,*
*Zyrcon Global Strategies LLP, and Leigh Wang*

## ORAL ARGUMENT IS NOT REQUESTED

# TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................ ii

TABLE OF AUTHORITIES........................................................................ iv

I.     INTRODUCTION ............................................................................1

II.    STATEMENT OF THE ISSUES .......................................................3

III.   STATEMENT OF JURISDICTION ..................................................3

IV.    STATEMENT OF THE CASE ..........................................................4

V.     STANDARD OF REVIEW ...............................................................6

VI.    SUMMARY OF THE ARGUMENT..................................................6

VII.   LEGAL ARGUMENT .......................................................................8

A.   The Rong Defendants Were Entitled to Recover their Reasonable Attorneys' Fees Under C.R.S. § 13-17-201....................................................................8

   1.   The Statute's Plain Language Reaches All Actions Sounding in Tort and does not Distinguish Between Statutory and Common Law Torts. ....................8

   2.   Statutory Trade-Secret Claims for Economic Damages Qualify as Statutory Torts Under the § 13-17-201 Framework........................................10

   3.   The Action Against the Rong Defendants Was Primarily Tort-Based, and the Fee Award Was Therefore Mandatory. ......................................................11

B.   NEITHER CUTSA NOR THE DTSA DISPLACES C.R.S. § 13-17-201....13

   1.   CUTSA Does Not Preempt § 13-17-201......................................................13

   2.   The DTSA Does Not Preempt C.R.S. § 13-17-201. ....................................16

   3.   Legislative History Does Not Override § 13-17-201's Clear Statutory Text. 18

C.   The District Court Did Not Abuse Its Discretion in Awarding the Full Lodestar Amount. ..........................................................................................21

   1.   Plaintiffs Failed to Preserve Their Objections Below and Cannot Raise Them for the First Time on Appeal..............................................................21

2.    The Lodestar Method Is Presumptively Reasonable. .................................22

3.    Plaintiffs Failed to Support Their Objections with Specific Evidence of Unreasonable Hours, Rates, or Tasks.............................................................24

**VIII.  CONCLUSION** ......................................................................................**27**

**BRIEF FORMAT CERTIFICATION**....................................................**29**

**CERTIFICATE OF SERVICE** ............................................................**30**

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Advanced Career Techs., Inc. v. John Does 1–10,*
  100 F. Supp. 3d 1105 (D. Colo. 2015)......................................................................8

*Burns v. United States,*
  501 U.S. 129 (1991) ..............................................................................................20

*Castro v. Lintz,*
  338 P.3d 1063 (Colo. App. 2014)...........................................................................9

*Dubray v. Intertribal Bison Coop.,*
  192 P.3d 604 (Colo. App. 2008) .......................................................................9, 13

*English v. Gen. Elec. Co.,*
  496 U.S. 72 (1990) ......................................................................................... 16, 21

*Gagne v. Gagne,*
  338 P.3d 1152 (Colo. App. 2014) ........................................................................12

*Glover v. Serratoga Falls LLC,*
  498 P.3d  (Colo. 2021) .........................................................................................12

*Harris Grp., Inc. v. Robinson,*
  209 P.3d 1188 (Colo. App. 2009) ........................................................................10

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983) ..............................................................................................23

*Houdek v. Mobil Oil Corp.,*
  879 P.2d 417 (Colo. App. 1994) ..........................................................................11

*In re Syngenta AG MIR 162 Corn Litig.,*
  61 F.4th 1126 (10th Cir. 2023)...............................................................................6

*Kennedy v. King Soopers Inc.,*
  148 P.3d 385 (Colo. App. 2006) ..........................................................................16

*Kerr v. Polis,*
  20 F.4th 686 (10th Cir. 2021) ..............................................................................18

*Lamie v. U.S. Tr.,*
  540 U.S. 526 (2004) ..............................................................................................19

*Marshall v. Chater,*
  75 F.3d 1421 (10th Cir. 1996)......................................................... 10, 14, 16, 22

*Missouri v. Jenkins*
  491 U.S. 274 (1989)...............................................................................................26

*Peoples Natural Gas Div. v. Pub. Utils. Comm'n,*
  698 P.2d 255 (Colo. 1985)....................................................................................14

*R.E.N. v. City of Colorado Springs*,
823 P.2d 1359 (Colo. 1992) ...............................................................................15
*Richison v. Ernest Grp., Inc.*,
634 F.3d 1123 (10th Cir. 2011) ...................................................... 10, 14, 16, 18
*Robinson v. City of Edmond*,
160 F.3d 1275 (10th Cir. 1998) ..........................................................................22
*Robinson v. Colo. State Lottery Div.*,
179 P.3d 998 (Colo. 2008) ..................................................................................12
*Southern Ute Indian Tribe v. Sebelius*,
657 F.3d 1071 (10th Cir. 2011) ..........................................................................18
*State v. Golden's Concrete Co.*,
962 P.2d 919 (Colo. 1998) ..................................................................................16
*Sticky.io, Inc. v. Martingale Software, LLC*,
No. 21-CV-00664-RM-STV, 2022 WL 1061911 (D. Colo. Apr. 8, 2022) 8, 12, 13,
18
*Swan v. Friot*,
No. 24-6147, 2024 WL 4564057 (10th Cir. Oct. 24, 2024) ...............................22
*U.S. Fax Law Ctr., Inc. v. Henry Schein, Inc.*,
205 P.3d 512 (Colo. App. 2009) ......................................................................8, 12
*United States v. Singer,*
No. 23-6120, 164 F.4th 1207 (10th Cir., 2026) ..................................................19
*Wade v. Fairbairn*,
No. 24-1101, 2024 WL 2368883 (10th Cir. May 23, 2024) ...............................22
*Wark v. Board of County Commissioners*,
47 P.3d 711 (Colo. App. 2002) ...........................................................................13
*Zerr v. Johnson*,
905 F. Supp. 872 (D. Colo. 1995) .......................................................................13
*Zuber v. Allen*,
396 U.S. 168 (1969) ............................................................................................20

**Statutes**

18 U.S.C. § 1836(b)(3)(D) ........................................................................................30
18 U.S.C. § 1838 .......................................................................................................31
C.R.S. § 7-74-105 .....................................................................................................28
C.R.S. § 7-74-108(2)(b) ............................................................................................29
C.R.S. § 13-17-201 ........................................................................................... passim

**Rules**

Federal Rule of Civil Procedure 12(b)(2) ........................................................ passim

v

## I.    INTRODUCTION

The District Court's award of attorneys' fees to Defendants-Appellees John Qiang Rong, Zyrcon Global Strategies, LLP ("Zyrcon"), and Leigh Wang (collectively, the "Rong Defendants") should be affirmed because Plaintiffs–Appellants ("Plaintiffs")' First Amended Complaint (the "Complaint"), as pleaded and as litigated, was an action sounding primarily in tort under Colo. Rev. Stat. § 13-17-201, which mandates a fee award once the District Court dismissed all claims against the Rong Defendants under Federal Rule of Civil Procedure 12(b)(2) ("Rule 12(b)(2)").

The Complaint alleged that the Rong Defendants participated in a coordinated scheme with Defendant Michael Troy Sparks and others to conceal Defendant Sparks's relationship with Chinese company PRD Technologies, Ltd., ("PRD") to misappropriate Plaintiffs' trade secrets, and profit from the alleged misconduct. *Docket No. 47* at 23 (Case No. 25-1308); *see* App. Vol. 3 at 3–4. Consistent with those allegations, Plaintiffs asserted against the Rong Defendants claims for fraudulent concealment, trade-secret misappropriation under Colorado Uniform Trade Secrets Act ("CUTSA") and the Defend Trade Secrets Act ("DTSA"), civil conspiracy, unjust enrichment, and conversion. *Docket No. 47* at 33; App. Vol. 1 at 43–50. The District Court correctly concluded that those claims, taken together and

1

evaluated according to the substance of the Complaint, were predominantly tort-based. Aplts. Supp. App. at 150.

Plaintiffs now seek to avoid that result by characterizing the case as predominantly statutory, making a distinction between statutory tort-based claims and common-law tort claims. Plaintiffs then incorrectly argue that CUTSA and the DTSA displace Colorado's mandatory fee-shifting statute. *Docket No. 47* at 8–13. These positions, many of which are raised here for the first time, cannot be squared with the allegations pleaded, the District Court's analysis, or the precedent interpreting § 13-17-201, all of which recognize that even statutory trade-secret misappropriation claims, particularly when combined with related fraud-based claims, sound in tort and are subject to the Colorado law's fee shifting scheme.

Plaintiffs' challenge to the amount of the fee award fares even worse. *Docket No. 47* at 26–31. Plaintiffs' challenge at the District Court failed in every respect: they did not conduct a review of the detailed billing records, they did not submit evidence to suggest the hours or rates submitted were unreasonable, and they did not even attempt to argue that the lodestar calculation was flawed. The District Court, in contrast, reviewed the billing records, found the requested hours and rates reasonable, and awarded the lodestar amount, rejecting Plaintiffs' half-hearted, perfunctory objections as unsupported, undeveloped, or waived. Aplts. Supp. App. at 150-151. Because the District Court correctly applied § 13-17-201 and did not

abuse its discretion in calculating the fee award, the judgment should be affirmed in full.

## II.    STATEMENT OF THE ISSUES

1.    Whether the District Court correctly held that § 13-17-201 applies to an action alleging trade secret and related tort claims seeking recovery for injuries to person and property.

2.    Whether the District Court correctly rejected Plaintiffs' contention that CUTSA and the DTSA preclude application of § 13-17-201 through their bad-faith fee shifting provisions or through CUTSA's displacement rule.

3.    Whether the District Court correctly concluded that the action against the Rong Defendants was primarily tort-based because the Complaint centered on alleged trade-secret theft, fraudulent concealment, civil conspiracy, and conversion arising from the same alleged misconduct.

4.    Whether the District Court acted within its discretion in awarding the full lodestar amount where the Rong Defendants' counsel submitted detailed time records, avoided block billing, exercised billing judgment, and Plaintiffs failed to support their conclusory objections with evidence or specificity.

## III.    STATEMENT OF JURISDICTION

The Rong Defendants adopt Plaintiffs' jurisdictional statement concerning subject-matter jurisdiction and incorporate it by reference in their Answering Brief.

3

## IV.     STATEMENT OF THE CASE

The Complaint alleged that "this action arises out of a fraudulent scheme and conspiracy" involving all Defendants, and that John Rong "sought out and initiated contact" with Defendant Sparks so he would sign a Master Services Agreement with PRD. App. Vol. 1 at 35. Plaintiffs further alleged that John Rong "did ultimately coordinate with all defendants" to have Defendant Sparks sign the MSA, which supposedly allowed Defendant Sparks to "concurrently secretly misappropriate plaintiffs' trade secrets and give them through defendant [John Rong] to PRD." *Id.* at 35, 37. According to the Complaint, Ms. Wang and Zyrcon "provid[ed] bridge financing to aid and abet this unlawful secretive concealed activity," coordinated payments to Defendant Sparks, and helped conceal Defendant Sparks's relationship with PRD while Defendant Sparks allegedly transferred Plaintiffs' trade secrets to PRD. *Id.* at 38. Plaintiffs alleged that the scheme allowed all Defendants to misappropriate Plaintiffs' trade secrets and enabled PRD to manufacture unauthorized "knockoffs" of Plaintiffs' products. *Id.* at 37-38, 47-48.

The Complaint asserted nine causes of action, with six claims asserted against the Rong Defendants. *Id.* at 43-54. As to the Rong Defendants, Plaintiffs asserted claims for fraudulent concealment, misappropriation under CUTSA, misappropriation under DTSA, civil liability for a conspiracy with joint liability, unjust enrichment, and conversion. *Id.* at 44, 46-54. In those counts, Plaintiffs

alleged that the Rong Defendants knowingly participated in the alleged trade secret misappropriation, concealed Defendant Sparks's relationship with PRD, conspired to divert Plaintiffs' technology for PRD's use, and received compensation or other financial benefits from the alleged scheme. *Id.* at 43, 47-54. The Complaint summarized the case by alleging that Defendants, "by devious means of fraudulent concealment, and conspiracy, have ultimately stolen and misappropriated ALL of the Plaintiffs' valuable proprietary confidential product design and manufacturing information and trade secrets." *Id.* at 43.

On July 11, 2025, the Rong Defendants were dismissed for lack of personal jurisdiction. App. Vol. 1 at 14, 30. On December 10, 2025, the District Court granted the First Motion in full. Aplts. Supp. App. at 8. On December 11, 2025, judgment was entered in favor of the Rong Defendants in the amount of $114,663.11. *Id.* at 10–11, 14–15. Plaintiffs filed Appeal No. 26-1013 on January 9, 2026, challenging the award of attorneys' fees (the "Fee Appeal"). On January 27, 2026, the Rong Defendants moved to consolidate the Fee Appeal with the appeal of the dismissal of the Rong Defendants, Appeal No. 25-1308 (the "Merits Appeal"). *Docket No. 36* (the Merits Appeal) At that point, the principal briefs in the Merits Appeal had already been filed, while briefing in the Fee Appeal had not yet commenced. *See Docket Nos. 28, 33* (the Merits Appeal). On February 20, 2026, the Court granted consolidation as modified and ordered supplemental briefing limited to the

5

attorneys' fees issues raised in the Fee Appeal. *Docket No. 41* (the Merits Appeal) at 1–2. The Court further directed that future filings be made in both appeals and that both matters be submitted to the same panel and, if oral argument were granted, argued together. *Docket No. 41* at 2–3.

## V.    STANDARD OF REVIEW

The Court reviews the "district court's attorneys' fee award for abuse of discretion, though in doing so [it] review[s] the district court's application of legal principles *de novo*, and . . . findings of fact for clear error." *In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1177 (10th Cir. 2023) (alterations and internal quotation marks omitted).

## VI.    SUMMARY OF THE ARGUMENT

The District Court correctly concluded that Plaintiffs' action against the Rong Defendants was one sounding primarily in tort and that § 13-17-201 therefore required an award of attorneys' fees upon dismissal under Rule 12(b)(2). Aplts. Supp. App. at 149–150, 210–212. The Complaint alleged that the Rong Defendants conspired to steal trade secrets, conceal the relevant conduct, and participate in conversion and related wrongdoing, and the District Court properly looked to that pleaded substance rather than to the mere presence of statutory labels when concluding that these allegations were clearly of tortious conduct. App. Vol. 1 at 37–46, 43–54; Aplts. Supp. App. at 149–150.

6

Plaintiffs' statutory-displacement arguments likewise fail. Aplts. Supp. App. at 149–150. The dispositive question under § 13-17-201 is whether the action, as pleaded against the Rong Defendants, was primarily tort-based and dismissed under Rule 12(b)(2), and the District Court correctly answered that question in the affirmative. *Id.* at 149-150. The inclusion of CUTSA and DTSA claims did not alter the gravamen of the Complaint, which repeatedly alleged tortious interference, concealment, conspiracy, misappropriation, and conversion arising from the same course of conduct. *Id.*; App. Vol. 1 at 40–46, 43–54.

Plaintiffs also fail to demonstrate any abuse of discretion in the amount of the fee award. *Docket No. 47* at 11-13. The District Court reviewed detailed billing records, found that counsel recorded time to the tenth of an hour, did not engage in block billing, and exercised billing judgment, while also recognizing that the procedural history required multiple motions and additional briefing. Aplts. Supp. App. at 153. It likewise found the hourly rates reasonable given counsel's experience and the specialized nature of the case, and Plaintiffs had not challenged those rates below. *Id.* at 152-154. Because Plaintiffs' objections were waived, undeveloped, or unsupported by specific examples, the full lodestar award should be affirmed.

## VII.     LEGAL ARGUMENT

**A.     The Rong Defendants Were Entitled to Recover their Reasonable Attorneys' Fees Under C.R.S. § 13-17-201.**

**1.     The Statute's Plain Language Reaches All Actions Sounding in Tort and does not Distinguish Between Statutory and Common Law Torts.**

The text of Section 13-17-201 turns on the tortious nature of the action, not on whether the alleged duty was created by statute or common law. The statute mandates an award of attorneys' fees whenever an action "brought as a result of . . . an injury to person or property occasioned by the tort of any other person" is dismissed pursuant to F.R.C.P. 12. *See, e.g.*, *Advanced Career Techs., Inc. v. John Does 1–10*, 100 F. Supp. 3d 1105, 1107–08 (D. Colo. 2015) (awarding attorneys' fees under § 13-17-201 following dismissal of tort and contract claims for lack of personal jurisdiction pursuant to F.R.C.P. 12(b)(2)). Its text is broad and unqualified; it does not distinguish between tort duties arising at common law and tort duties created by statute. Colorado courts have recognized that the text of § 13-17-201 is unambiguous and applies to any action occasioned by the tortious conduct of another person, including claims arising under federal or state statutes. *U.S. Fax Law Ctr., Inc. v. Henry Schein, Inc.*, 205 P.3d 512, 517-18 (Colo. App. 2009) (applying § 13-17-201 to federal and state statutory torts); *see also Sticky.io, Inc. v. Martingale Software, LLC*, No. 21-CV-00664-RM-STV, 2022 WL 1061911, at *1 (D. Colo. Apr. 8, 2022) (applying § 13-17-201 where two claims arose under federal statutes).

8

Plaintiffs' assertion that § 13-17-201 does not apply to this action because their claims are "predominately statutory" rather than common law torts reflects a fundamental misunderstanding of both the statute's text and Colorado precedent. *Docket No. 47* at 9, 12–13. The relevant inquiry is not whether the source of the duty breached is statutory or common law, but whether the action is primarily a tort action. *Dubray v. Intertribal Bison Coop.*, 192 P.3d 604, 607 (Colo. App. 2008). By the Complaint's own description of the harm alleged, the action was primarily a tort action.

Plaintiffs' reliance on *Castro v. Lintz* is likewise misplaced. 338 P.3d 1063 (Colo. App. 2014); *Docket No. 47* at 10, 12–13. *Castro* did not hold that statutory torts fall outside § 13-17-201; it held that the action there, viewed as a whole, was not primarily tortious because it centered on veil-piercing to collect a judgment, an enforcement mechanism, not a tort remedy. *Id.* at 1070. Far from supporting Plaintiffs' proposed statutory/common-law distinction, *Castro* rejects categorical limits on § 13-17-201 and confirms that the statute is not confined to any particular "species" of tort claim. *Id.*; *Docket No. 47* at 10, 12–13.

Because the action against the Rong Defendants was brought on alleged tortious misconduct, an award of fees under § 13-17-201 was mandatory.

**2.  Statutory Trade-Secret Claims for Economic Damages Qualify as Statutory Torts Under the § 13-17-201 Framework.**

Section 13-17-201 applies to Plaintiffs' statutory claims because Trade-Secret misappropriation is a tort that injures property. To avoid this conclusion, Plaintiffs now advance a textual theory that § 13-17-201 reaches only actions involving physical injury to person or property and therefore excludes trade-secret claims alleging purely economic loss. Plaintiffs have waived this argument by not raising it below. A party may not reserve a new statutory-interpretation theory and raise it for the first time on appeal. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127–31 (10th Cir. 2011); *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996).

Even if the Court gets to Plaintiffs' assertion, the theory fails on the merits. A trade secret is property. Its misappropriation injures the owner by depriving it of exclusive control over information that derives independent economic value from not being generally known. A claim seeking damages for that deprivation is therefore an action for injury to property caused by tortious conduct. *See Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1199 (Colo. App. 2009) ("Conversion is an intentional tort ....").

Plaintiffs' assertion that an exclusion for economic injuries should be read into § 13-17-201 is negated by their citation to *Castro*, which holds that § 13-17-201 "is applicable to a tort claim which alleges only economic injury." *Castro* at 1067;

10

*Houdek v. Mobil Oil Corp.*, 879 P.2d 417, 424 (Colo. App. 1994) (rejecting the argument that the statute is inapplicable to tort claims alleging only economic injury).

The duty not to take or use another's confidential business information is recognized in tort law, even when codified in CUTSA and the DTSA. The injury is the loss of exclusive control over proprietary information and its competitive value; and the relief sought—measured by the plaintiff's loss or the defendant's unjust enrichment—is compensatory.

Federal courts applying Colorado law have reached the same conclusion. In *Sticky.io*, the court had "little trouble" concluding that the action sounded in tort because "[m]isappropriation, interference with business relationships, and fraud are torts." *Sticky.io, Inc.*, WL 1061911, at *1 (holding misappropriation of trade secrets is a statutory tort and applying § 13-17-201(1)). The same reasoning controls here. Plaintiffs asserted CUTSA and DTSA claims seeking economic damages for alleged misappropriation. *Docket No. 47* at 11-13. Those claims sound in tort, and § 13-17-201 applies.

> ### 3. The Action Against the Rong Defendants Was Primarily Tort-Based, and the Fee Award Was Therefore Mandatory.

Because the Complaint was primarily tort-based, § 13-17-201 mandated a fee award upon dismissal. Plaintiffs cannot avoid that result by recasting the case on appeal. The Complaint itself repeatedly describes the Rong Defendants' alleged

conduct as tortious, and Plaintiffs' effort to distinguish their tort claims on the ground that they are labeled "misappropriation" fails for the reasons already established: misappropriation of trade secrets is a tort. *Sticky.io*, 2022 WL 1061911, at *1; *U.S. Fax Law Ctr.*, 205 P.3d at 517–18; App. Vol. 1 at 34, 46–53.

That characterization is not merely rhetorical. "[T]he controlling issue is how the plaintiff has characterized the claim in the complaint," and Plaintiffs characterized theirs in unmistakably tortious terms. *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1010 (Colo. 2008). The claim mix confirms what the pleading's language announces. Fraudulent concealment and conversion are traditional common law torts. App. Vol. 1 at 43–44, 53–54. Civil conspiracy is likewise a recognized tort claim. *Glover v. Serratoga Falls LLC*, 498 P.3d 1110, 1110 (Colo. 2021). Misappropriation under CUTSA is a statutory tort, and the DTSA claim fares no differently, as § 13-17-201 extends to federal statutory torts with equal force. *Sticky.io*, 2022 WL 1061911, at *1; *U.S. Fax Law Ctr.*, 205 P.3d at 517–18. Even unjust enrichment arose from the same alleged misconduct underlying the fraud, conspiracy, conversion, and misappropriation theories. App. Vol. 1 at 52–53. A single non-tort claim tethered entirely to tortious conduct does not alter the overwhelmingly tort-based character of the action. *Gagne v. Gagne*, 338 P.3d 1152, 1167–68 (Colo. App. 2014).

Colorado courts routinely apply § 13-17-201 in mixed actions where tort claims predominate, and the precedent is uniform. In *Dubray v. Intertribal Bison Co-Op.*, fees were awarded where six of eight claims sounded in tort. 192 P.3d at 607; *see also Wark v. Board of County Commissioners*, 47 P.3d 711, 717 (Colo. App. 2002) (affirming fees following dismissal of both tort and contract claims together under Rule 12(b)). The Tenth Circuit Court of Appeals followed the same approach in *Infant Swimming Research, Inc. v. Faegre & Benson, LLP*. 192 P.3d 604, 607 (Colo. App. 2008). And in *Sticky.io*, the court had "little trouble" concluding that an action alleging misappropriation, fraud, and interference sounded in tort notwithstanding the plaintiff's reliance on federal statutes. 2022 WL 1061911, at *1. The action here fits squarely within that unbroken line of authority.

Because the action sounded primarily in tort and was dismissed on the Rong Defendants' Rule 12(b)(2) motion, the fee award was mandatory. *Zerr v. Johnson*, 905 F. Supp. 872, 875 (D. Colo. 1995). Because § 13-17-201's statutory prerequisites are satisfied, the District Court's award must be affirmed.

### B.    Neither CUTSA nor the DTSA Displaces C.R.S. § 13-17-201.

### 1.    CUTSA Does Not Preempt § 13-17-201.

Plaintiffs' new contention that CUTSA is a self-contained remedial scheme that displaces § 13-17-201 is also waived. Before the District Court, Plaintiffs argued only that the statutory trade-secret claims "control and predominate" and that the tort

counts were dependent on those claims; they did not invoke CUTSA's displacement clause or argue that CUTSA's fee provision rendered § 13-17-201 unavailable. Their Rule 72 objections likewise omitted any CUTSA-displacement theory, challenging only finality under Rule 54. The Court should therefore decline to consider this newly minted argument. *See Richison*, 634 F.3d at 1127–31; *Marshall*, 75 F.3d at 1426.

Even if the Court were to reach the issue, CUTSA's attorney-fee provisions do not preempt § 13-17-201. The two statutes can be read harmoniously, and nothing in CUTSA forecloses application of § 13-17-201 to this action. Under Colorado law, "two statutes concerning the same subject are to be read together to the extent possible so as to give effect to legislative intent." *Peoples Natural Gas Div. v. Pub. Utils. Comm'n*, 698 P.2d 255, 263 (Colo. 1985). Nothing in CUTSA's fee provision or displacement clause requires the conclusion that CUTSA silently withdraws the mandatory fee consequence that § 13-17-201 attaches to the Rule 12(b)(2) dismissal of a tort action.

Plaintiffs' contrary argument conflates two distinct fee-shifting provisions. Section 13-17-201 applies when a tort action is dismissed under Rule 12. Aplts. Supp. App. at 148–150. CUTSA's fee provision, by contrast, authorizes fees when a misappropriation claim is made in bad faith. C.R.S. § 7-74-105. Those statutes do not conflict but work in harmony to provide defendants relief in the face of a baseless

14

claim. Nothing in either text suggests that either statute provides the exclusive basis for fees whenever a trade-secret claim is pleaded.

CUTSA's displacement clause is no obstacle. Importantly, Section 7-74-108(1) makes CUTSA the exclusive civil remedy for "misappropriation of a trade secret," but the fee award here was not awarded as a substantive remedy for misappropriation. It was awarded because plaintiffs brought an action sounding in tort that was dismissed under Rule 12(b)(2). Applying § 13-17-201 does not alter the elements of a CUTSA claim, expand or contract CUTSA's substantive remedies, or interfere with a plaintiff's ability to pursue a non-dismissed misappropriation claim. It simply enforces Colorado's separate rule governing attorneys' fees after threshold dismissal of tort actions. That reading is reinforced by the express preservation, in CUTSA's displacement clause, of "other civil remedies that are not based upon misappropriation of a trade secret." C.R.S. § 7-74-108(2)(b). A fee award based on the dismissal of the action is not a remedy based on misappropriation itself.

The statutes therefore operate in parallel, not in conflict. CUTSA authorizes fees in one defined circumstance; § 13-17-201 mandates fees in another. Reading both according to their terms gives effect to each and leaves CUTSA fully operative. CUTSA therefore does not displace § 13-17-201 here. *R.E.N. v. City of Colorado Springs*, 823 P.2d 1359, 1364 (Colo. 1992) (explaining that statutes addressing the

15

same subject matter must be construed in *pari materia* to effectuate legislative intent and to give consistent, harmonious, and sensible effect to all parts).

### 2.    The DTSA Does Not Preempt C.R.S. § 13-17-201.

Plaintiffs cannot manufacture preemption where the DTSA expressly preserves other state-law remedies and creates no conflict with C.R.S. § 13-17-201. Plaintiffs' preemption argument fails both procedurally and on the merits. They did not raise preemption in the District Court and therefore waived it. Plaintiffs never invoked congressional intent, cited to DTSA legislative history, or argued that the DTSA's fee provision displaces state fee-shifting statutes. A theory raised for the first time on appeal is not properly before the Court. *See Richison*, 634 F.3d at 1127–31; *Marshall*, 75 F.3d at 1426.

Even if considered, the argument fails as a matter of law. Federal law preempts state law only through express preemption, field preemption, or conflict preemption. *English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79 (1990). Colorado courts have made clear that, because preemption rests on the Supremacy Clause, a Colorado fee-shifting statute is displaced only to the extent it *actually* conflicts with federal law. *State v. Golden's Concrete Co.*, 962 P.2d 919, 926 (Colo. 1998); *Kennedy v. King Soopers Inc.*, 148 P.3d 385, 388 (Colo. App. 2006). The DTSA creates no such conflict.

Plaintiffs' attempt to manufacture preemption by pointing to the DTSA's attorneys' fee provision, which authorizes fees in limited circumstances, fails. *Docket No. 47* at 11-12. Courts can award attorneys' fees under the DTSA when a misappropriation claim is made in bad faith, when a motion to terminate an injunction is made or opposed in bad faith, or when willful and malicious misappropriation exists. 18 U.S.C. § 1836(b)(3)(D). But nothing in that provision suggests those circumstances are exclusive of otherwise applicable state-law fee remedies. To the contrary, the DTSA expressly provides that it "shall not be construed to preempt or displace any other remedies, whether civil or criminal, provided by Federal, State, commonwealth, possession, or territory law for the misappropriation of a trade secret." 18 U.S.C. § 1838. That savings clause confirms that Congress did not invoke field preemption to displace § 13-17-201.

There is no conflict preemption either. The DTSA and § 13-17-201 regulate different questions and can be applied together. The DTSA's fee provision addresses specified forms of misconduct in trade-secret litigation. Section 13-17-201, by contrast, mandates fees when an action sounding in tort is dismissed under Rule 12. A court can apply § 13-17-201 to a dismissed DTSA-based tort action without changing the DTSA's elements, remedies, or standards. Courts applying Colorado law have therefore treated the two statutes as compatible and have applied § 13-17-

17

201 in actions that included DTSA claims. *See Sticky.io*, 2022 WL 1061911, at *1.

The DTSA therefore does not preempt application of § 13-17-201.

### 3. Legislative History Does Not Override § 13-17-201's Clear Statutory Text.

Plaintiffs' attempted reliance on the legislative history of Section 13-17-201

is irrelevant and misplaced because the statute's text is clear and unambiguous, and

Plaintiffs never advanced a contrary interpretation in the District Court. Rather than

arguing below that legislative history limits or qualifies the statute's plain language,

Plaintiffs raise that theory for the first time on appeal. The argument is therefore

waived, and the Court should decline to consider it. *See Richison*, 634 F.3d at 1127–

31.

Even if the argument had been preserved, it fails under the principles of

statutory interpretation. The Tenth Circuit's statutory-interpretation decisions

foreclose Plaintiffs' effort to manufacture ambiguity through legislative history. The

court has repeatedly held that statutory interpretation begins with the text and, if the

language is clear and unambiguous, that language controls. *See Southern Ute Indian

Tribe v. Sebelius*, 657 F.3d 1071, 1078 (10th Cir. 2011). It has likewise refused to

infer unstated limitations from silence or extra-textual theories where Congress did

not place them in the enacted text, emphasizing that courts must look to the

"underlying text" and may not supply meaning Congress did not express. *See Kerr

v. Polis*, 20 F.4th 686, 702 (10th Cir. 2021) (en banc). And more recently, the Tenth

Circuit explained that reliance on statutory history to overcome better textual evidence is "always a fraught proposition," because courts should not "divine through indirect evidence" what the enacted language answers directly. *United States v. Singer,* No. 23-6120, 164 F.4th 1207, 1213 (10th Cir., 2026). That framework controls here.

Section 13-17-201 states the operative rule in straightforward terms, and nothing in its text creates the kind of genuine ambiguity that would justify resort to legislative history. Plaintiffs' reliance on legislative history is therefore irrelevant and misplaced because it asks the Court to cloud otherwise plain statutory language with extra-textual material rather than apply the statute as written. *See also Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) (finding that the fact that statute is awkward, or even ungrammatical, does not make it ambiguous, so as to permit court to resort to its legislative history in interpreting it). On this record, the Court should reject that invitation and enforce Section 13-17-201 according to its text.

Even if the Court were to consider the substance of Plaintiffs' newly raised argument, it still lacks merit. Plaintiffs invoke statements about deterring "baseless tort cases," but nothing in the legislative history suggests the General Assembly meant to exclude statutory tort claims or actions seeking economic loss. *Docket No. 47* at 9–10. To the contrary, the legislature's concern for preserving legitimate litigation appears in its decision not to adopt a broader fee-shifting regime tied to

19

summary judgment, while still mandating fees for tort actions that cannot survive a Rule 12 motion.[1] Indeed, the legislature's concern for legitimate litigation is reflected in its rejection of a broader-fee shifting regime for summary judgment, not for baseless litigation that cannot survive a Rule 12(b) motion to dismiss.

Plaintiffs' reliance on the supposed legislative history of CUTSA and the DTSA is weaker still because they identify no such history. *Docket No. 47* at 9-10. As the Supreme Court has cautioned, "[l]egislative silence is a poor beacon to follow in discerning the proper statutory route." *Zuber v. Allen*, 396 U.S. 168, 185 (1969). And an "inference drawn from congressional silence certainly cannot be credited when it is contrary to all other textual and contextual evidence" of legislative intent. *Burns v. United States*, 501 U.S. 129, 136 (1991) (abrogated on other grounds by *Dillon v. United States*, 560 U.S. 817, 820 (2010)). Plaintiffs therefore cannot narrow § 13-17-201 by appealing to legislative history they have not provided, particularly where doing so would contradict the statute's broad operative language. Whatever work legislative history can do, it cannot override the statute's clear text, and it confirms that this case falls within the core class of baseless tort actions the General Assembly meant § 13-17-201 to reach.

---

[1] Section 13-17-201 includes an exception for good-faith novel claims, but that exception must be expressly invoked in the complaint, which Plaintiffs failed to plead.

C.     **The District Court Did Not Abuse Its Discretion in Awarding the Full Lodestar Amount.**

1.     **Plaintiffs Failed to Preserve Their Objections Below and Cannot Raise Them for the First Time on Appeal.**

Plaintiffs' lodestar attack is not merely overstated; much of it is new and thus should not be considered. As the Recommendation observed, Plaintiffs "spend only a page" challenging reasonableness and "offer few specific objections." Aplts. Supp. App. at 153. Those objections were limited to four undeveloped points: the overall fee was too high for a case dismissed at the pleading stage, partner time spent conferring with *pro se* Defendant Sparks was supposedly unjustified, paralegal review "appears" redundant, and large law firms now use artificial intelligence and therefore should have spent less time drafting and researching. *Id.* at 104. Plaintiffs did not identify any supposedly improper "serial billing" entry. *Docket No. 47* at 13–14; *see also* Aplts. Supp. App. at 104. They did not point to any vague "admin" percentage. *Id.* Most notably, the opening brief's new reliance on supposed "actual" invoice references to Westlaw Precision AI appears nowhere in Plaintiffs' response to the fee motion. *Id.*

Those omissions are dispositive. Judge Domenico held the point expressly: "Plaintiffs waived their Objections by failing to raise them in their Response to the Motion," and he relied on the settled Tenth Circuit rule that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed

21

waived." Aplts. Supp. App. at 210-211; *Marshall*, 75 F.3d at 1426 (10th Cir. 1996) (internal citations omitted); *accord Swan v. Friot*, No. 24-6147, 2024 WL 4564057, at *2 (10th Cir. Oct. 24, 2024); *Wade v. Fairbairn*, No. 24-1101, 2024 WL 2368883, at *3 (10th Cir. May 23, 2024).

That waiver principle applies with full force here. So even if Plaintiffs try to recast the opening brief's new theories as mere elaborations, the record shows they are new objections altogether. The specific appellate complaints now pressed—serial billing, vague administrative entries, purported invoice-based AI charges, and the assertion that the court made no findings—were never actually presented when the District Court had the opportunity to address them. *Id.* They are therefore waived.

### 2.    The Lodestar Method Is Presumptively Reasonable.

The District Court applied the correct framework and then did the work that lodestar review requires, making its award appropriately supported and reasonable. Under settled Tenth Circuit law, a reasonable fee is calculated using the lodestar method—reasonable hours multiplied by a reasonable hourly rate—and that figure carries a presumption of reasonableness. *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). The Magistrate Judge did not assume the fee request was reasonable; he stated that he had "reviewed the affidavit and detailed hourly accounting submitted by the [Rong] Defendants" before recommending the full award. Aplts. Supp. App. at 152. He further found that "[t]he amounts billed are

22

tracked to the tenth of an hour and counsel did not engage in any block billing," and that "[w]here appropriate defense counsel reduced hours." *Id.* at 1540156, 207, 215. The Recommendation of United States Magistrate Judge on the Rong Defendants' Motion for Attorneys' Fees (the "<u>Recommendation</u>") also explained why this was not a simple one-motion case: Plaintiffs amended, multiple motions to dismiss followed, and the Rong Defendants had to respond to Plaintiffs' objections to the Recommendation. *Id.* at 154-155. That is precisely the kind of record-specific scrutiny required, an assessment of whether the time spent was reasonable in light of the complexity of the case, the strategies pursued, and the responses necessitated by an opponent's maneuvering. *Hensley v. Eckerhart*, 461 U.S. 424, 434–37 (1983).

The District Court likewise addressed rates, not just hours. Aplts. Supp. App. at 155. It noted Mr. Ottele's 26 years of litigation experience, his Chambers-ranked practice, the experience of the paralegals and associate, and the specialized nature of trade-secret litigation. *Id.* It then found the rates reasonable, emphasizing both the specialized demands of trade-secret litigation and the fact that Plaintiffs "have not challenged the rates charged by counsel for the Rong/Wang Defendants." *Id.* And it found that "the Court does not find that any adjustment of this number is necessary," particularly because the Rong Defendants "obtained all of the relief that they sought, and in a reasonably expeditious manner." *Id.*

23

### 3. Plaintiffs Failed to Support Their Objections with Specific Evidence of Unreasonable Hours, Rates, or Tasks.

Even setting aside Plaintiffs' clear waiver of any substantive arguments challenging the fee amount, the merits argument collapses under the Recommendation's own findings. The Magistrate Judge did not rubber-stamp the request. He explained that he had reviewed the fee submission, that "[t]he amounts billed are tracked to the tenth of an hour and counsel did not engage in any block billing," that "[w]here appropriate defense counsel reduced hours," and that the work expanded because Plaintiffs amended, multiple motions to dismiss followed, and objections to the Recommendation required an additional round of briefing. Aplts. Supp. App. at 152–154. The Magistrate Judge's evaluation of the fee petition is the opposite of the opening brief's assertion that the court made "no specific findings." *Docket No. 47* at 14.

The serial billing argument fails at the threshold because the Magistrate Judge found that "counsel did not engage in any block billing." Aplts. Supp. App. at 152. And the opening brief still does not identify a single entry that supposedly combines unrelated tasks in a way that prevented meaningful review. *Docket No. 47* at 13–14. The record reflects exactly why multiple related entries would exist: amended pleadings, multiple Rule 12 motions, briefing on objections, and opposition to Plaintiffs' unsuccessful effort to cure the jurisdictional defects through amendment. *Id.* In that setting, recurring entries are evidence of the amount of work Plaintiffs'

24

litigation strategy required, not proof of overbilling. Nor did Plaintiffs challenge the hourly rates below, and the District Court independently found those rates reasonable based on counsel's experience and the specialized demands of trade-secret litigation. Aplts. Supp. App. at 155-156.

Plaintiffs' complaint about partner time spent conferring, apparently a reference to conferrals with *pro se* Defendant Sparks, fares no better. Aplts. Supp. App. at 104. The Recommendation squarely rejected it: Plaintiffs "fail to explain why it was unreasonable to confer with pro se Defendant Sparks," particularly when Plaintiffs' own counsel also conferred with Rong/Wang counsel about the scheduling order, and "the Court fails to understand how telephonic communications would be less efficient than other forms of communication." *Id.* at 153. The Rong Defendants' reply supplied the obvious practical point: coordinating with an unrepresented co-defendant requires more time and attention because a *pro se* litigant lacks counsel's familiarity with deadlines, procedure, and coordinated defense strategy. Rebranding that work on appeal as "ministerial tasks" does not speak to the District Court's actual reasoning.

The same is true of Plaintiffs' complaint about supposed duplicate paralegal work. *Id.* at 104, 153-154. As the Recommendation noted, Plaintiffs "do not cite to any specific examples of this double billing." *Id.* at 153. The District Court credited the Rong Defendants' explanation that "[p]aralegals perform document review,

organizational tasks, and case administration that complement attorney work, and they could not perform that work without their own review of the critical filings and documents." *Id.* at 154. That explanation is entirely consistent with *Missouri v. Jenkins*, which recognizes that using paralegals for lower-rate work is part of the "cost-effective delivery of legal services," not a basis for fee reduction. 491 U.S. 274, 288 (1989). Far from proving duplication, the staffing decisions here reflect ordinary and cost-effective billing judgment.

Finally, Plaintiffs' AI argument is both waived and meritless. Below, Plaintiffs argued only that large firms "now all use artificial intelligence" and therefore should have spent less time on drafting and research. Aplts. Supp. App. at 104. The District Court answered that argument by pointing to the Rong Defendants' counsels' response to this argument," namely that counsel "verifies every case cited through standard legal research databases such as Westlaw and would never use artificial intelligence as a substitute for [its] duties to the Court," and that the Rong Defendants "cannot be punished for selecting counsel that understands the ethical risks of reliance on artificial intelligence." *Id.* at 154. Plaintiffs' new reference to supposed Westlaw Precision AI charges on a billing sheet still does not identify a single inflated time entry, a single redundant task, or a single unreasonable charge—and, in any event, that invoice-based theory was never presented in the fee response. *Docket No. 47* at 14; Aplts. Supp. App. at 54, 104. Nor does the use of an AI-assisted

26

research tool undermine or discredit the verification referenced by the Magistrate Judge and originally raised by undersigned counsel. Aplts. Supp. App. at 114-15, 152-54.

Plaintiffs have therefore failed to show that the District Court abused its substantial discretion by awarding the Rong Defendants their full attorneys' fees under the lodestar.

### D.    Award of Attorneys' Fees On Appeal.

The Rong Defendants will move for an award of the attorneys' fees they incur on appeal pursuant to § 13-17-201 and 10th Cir. R. 39.2.

## VIII.   CONCLUSION

The District Court's order awarding attorneys' fees to the Rong Defendants should be affirmed. The Complaint, by its own allegations, asserted a tort-based action against the Rong Defendants, and once those claims were dismissed under Rule 12(b), § 13-17-201 mandated a fee award.

The District Court also acted well within its discretion in determining the amount of that award. It reviewed the billing submissions, found the requested fees reasonable, and entered judgment in favor of the Rong Defendants.

Because Plaintiffs have shown no error in the District Court's application of § 13-17-201 and identified no abuse of discretion in its lodestar analysis, the judgment should be affirmed in full.

27

Respectfully submitted,

*/s/ Christopher L. Ottele*
Christopher L. Ottele
Ruth A. Turley
BROWNSTEIN HYATT
FARBER SCHRECK, LLP
675 15th Street, Suite 2900
Denver, CO 80202
Telephone: 303.223.1163
Email: cottele@bhfs.com; rturley@bhfs.com
*Attorneys for Defendant- Appellees John
Qiang Rong, Zyrcon Global Strategies LLP,
and Leigh Wang*

28

## BRIEF FORMAT CERTIFICATION

Pursuant to Tenth Circuit Rule 32 and the Court's February 20, 2026, Order (ECF 41) I certify that Appellees' Answer Brief is proportionally spaced, has a typeface of 14 points, and contains approximately 6,138 words according to the word-processing program.

Dated: April 22, 2026                    /s/ *Christopher L. Ottele*
                                         Christopher L. Ottele

## CERTIFICATE OF SERVICE

I hereby certify that on this 22ND day of April 2026, I electronically filed the foregoing **APPELLEES' SUPPLEMENTAL ANSWERING BRIEF** with the Clerk of the Court of the Tenth Circuit Appellate Court by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

Dated: April 22, 2026                    *s/ Christopher L. Ottele*
                                         Christopher L. Ottele